22423. SIMS *v.* THE STATE.

DECIDED SEPTEMBER 1, 1932. REHEARING DENIED OCTOBER 1, 1932.

*Hugh E. Combs,* for plaintiff in error.

*M. L. Felts, solicitor-general,* contra.

LUKE, J.   Paul Sims was indicted for manufacturing intoxicating liquor on November 18, 1931, in Wilkes county, Georgia.  The jury found him guilty and recommended that he be punished as for a misdemeanor.  His motion for a new trial was overruled and he excepted.

George M. Walton, sworn for the State, testified in part as follows:  "I know  .  .  Ollie Williams and Paul Sims.  On or about November 18, 1931, I saw them.  On that day we found some beer and the cap and condenser.  We never found the pot. The beer was fermented and alcoholic, and if drunk to excess would produce intoxication.  There was evidence that liquor had been made there—old slop.  .  .  That was about three hundred yards from these defendants' house.  They lived together.  .  .  They were leaving the house—not coming from the still.  Ollie.tried to run and I had to pull my gun on him, but Paul did not give me any trouble.  .  .  We hit a path or tracks back of their house to the still.  .  .  I found the tracks of two men.  Paul's toe was out of his shoes, but they both said they were their tracks.  I carried them to the still.  When they got down there they showed me where they had toted water to the still.  They both told me then and there that they had worked at that still.  They said they worked for Gad Gresham.  They said they made ten gallons of liquor for him and he paid them forty cents apiece.  .  .  They also admitted that they had been to the still that morning and drunk some beer. I say from my observation that those tracks were theirs.  Paul had still-slop on him.  That was in Wilkes county.  .  .  These statements were freely and voluntarily made to me.  I offered them no inducements or threats of any kind.  .  .  They did not tell me anything about the still until I asked them about it; you know they did not voluntarily tell me.  .  .  They told me about the still at the still.  They did not admit it at the house.  .  .  As to how long it was I pulled the pistol on him, it was long enough for me to put them in the car and search the house.  .  .  I never handcuffed them, and never said an unkind word to them of any kind. I have had Paul before, and he knew that I was not going to hurt

him, because I had never mistreated him. . . I know they did not make those statements to me under the influence of fear on them from the drawing of the pistol on Ollie. . . I don't think there was any other house closer than their house. There was plenty of other houses in that neighborhood. Gad Gresham lives convenient, but not as close as theirs. . ."

The defendant Ollie Williams made the following statement to the jury: "I don't know a thing about it. I did not know it was down there until Mr. Walton carried me down there. The reason I told him I toted the water was because he had his gun on me, and I was afraid and told him that." Paul Sims made this statement to the jury: "Mr. Walton met this boy just about twenty yards beyond my house, and he throwed a gun on him and told him to get in the car. It frightened me. I figured he might be holding him up. He came in about twenty yards of the house and told me to get in the car. He said: 'You have been making liquor.' And I says, 'No, sir.' He carried me across the field, and I don't know what I told him. I was kind of frightened. I know I ain't guilty of making liquor."

A. H. Hopkins, sworn for the State, testified as follows: "I was present at the time this still was raided. I saw these two defendants. I heard them make a statement. No threats of violence or any offer of reward or inducement of any kind was offered to them to make the statement—not while I was there. The statement of this black one [Paul Sims was so described] was freely and voluntarily made. I don't think they were frightened. . . There was some smoke down there at that still when I got there. It looked like it had run a few hours before that." The testimony of P. W. Combs substantiates that of George M. Walton in its material parts, and we see no occasion to set out his testimony.

■ There is not the slightest doubt in our minds that the evidence supports the conviction of Paul Sims, and we hold that the trial judge did not err in overruling the general grounds of the motion for a new trial.

Special ground 1 is merely an elaboration of the general grounds, and needs no special consideration.

■ Special ground 2 avers that the State failed to prove the venue. It will be observed that after the witness Walton had testified that he had carried the defendants to the still, he swore: "That was in

Wilkes county." We are quite sure that any fair construction of the witness's statement leads inevitably to the conclusion that he had reference to the place where the still had been located. Therefore we hold that this ground is not meritorious. Special ground 3 likewise raises the question as to proof of the venue. There is no merit in it.

■ Special ground 4 complains of the following charge of the court: "If you find there was hope or fear, yet if you find the hope or fear originated in the party's own mind from seeds of his own planting, without being induced by another, and under the influence of a hope or fear thus originated the defendant made a confession, this will not exclude the confession, if any, as evidence. The hope or fear that excludes is that, and that only, which some other person kindles or excites." This charge states a correct principle of law, is applicable to the facts of the case, and is not erroneous for any reason assigned.

■ It appears from special ground 5 that counsel objected to the testimony of the witness Walton as to a confession, upon the ground that "the confessions or incriminating statements were not freely and voluntarily made. . ." The ground states: "It is contended that while there might not have been any threats of injury to the defendant to produce from him the alleged confession, or incriminating statements, the acts of the arresting officer were more ominous and potential than actual threats of bodily harm would have been." In connection with this ground counsel quotes as follows from the testimony of the witness Walton: "They did not tell me anything about the still until I asked them; you know they did not voluntarily tell me." Construing the witness's statement in the light of its context, and in connection with the positive testimony of the same witness that the confession was freely and voluntarily made, the objection was not good. It occurs to us that the reasonable construction of the statement is that the witness merely meant to say that the defendant did not make any confession until he asked him about the matter.

The gist of the last special ground (numbered 6) is that the evidence failed to show that there was any confession in the case. The evidence refutes this assignment, and there is no merit in it.

In conclusion, we hold that the evidence supports the verdict, and that none of the special grounds discloses reversible error.

*Judgment affirmed. Broyles, C. J., and Hooper, J., concur.*